# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

ROLAND HAYES EDMONDS )
                     )
v.                        )       Nos. 1:05-cv-353 / 1:00-cr-114
                     )       *Chief Judge Curtis L. Collier*
UNITED STATES OF AMERICA )

# M E M O R A N D U M

Before the Court is a motion by defendant Ronald Hayes Edmonds ("Edmonds") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Court File No. 2]. Having previously dismissed the other claim raised in Edmonds § 2255 motion, the Court will now address Edmonds claims of ineffective assistance of counsel against his various attorneys [Court File No. 4]. In support of his ineffective assistance of counsel claims, he has alleged several instances of deficient performance. For the reasons which follow, the Court determines a hearing is not necessary and Edmonds's motion will be **DENIED** [Court File No. 2].

## I.  28 U.S.C. § 2255 - Standard of Review

This Court must vacate and set aside the sentence if it finds "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly

appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. at 354; *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

"On collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir., 1998), *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair*, 157 F.3d at 430, *quoting United States v. Frady*, 456 U.S. 152, 166 (1982). A defendant must show a "fundamental defect" in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error which violates due process in order to prevail under 28 U.S.C. § 2255. *See Fair v. United States*, 157 F.3d at 430, *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).

## II.    Procedural Background

A federal grand jury returned a one-count indictment against Edmonds for knowingly possessing with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). After Edmonds' motion to suppress was denied, he elected to have his trial without a jury and signed a waiver of trial by jury (Crim. Court File Nos. 39 & 48). On March 12, 2001, the matter proceeded to trial without a jury on the one count indictment. On May 15, 2001, the Court entered its Memorandum and Order finding Edmonds guilty of the crime charged in the indictment, *i.e.,* possessing with intent to distribute crack cocaine (Crim. Court File No. 54). Subsequent motions for a new trial were denied and Edmonds was sentenced on October 18, 2002. Edmonds offense level was 32, his criminal history category was VI, and since he was a career offender, his guideline range was 210-240 months. The Court sentenced him to 210 months in the custody of the Bureau of Prisons.

3

Edmonds subsequently pursued a direct appeal. The United States Court of Appeals for the Sixth Circuit affirmed the judgment of this Court in all respects after concluding Edmonds failed to show statements made in an affidavit supporting a search warrant application were either recklessly or deliberately false; nondisclosure of the confidential informant affected his ability to receive a fair trial; the prosecutor's alleged failure to provide him a copy of the police officer's report of a drug buy until after trial was a *Brady* violation; and requested police logs could serve as the basis for finding a *Brady* violation. *United States v. Edmonds*, 106 Fed.Appx. 416 (6th Cir.), *available at* 2004 WL 1791478, *cert. denied*, 543 U.S. 1030 (2004).

The pending § 2255 motion was timely filed on November 30, 2005, within one year from the date the petition for *certiorari* was denied. *See Clay v. United States,* 537 U.S. 522, 532 (2003) (one-year limitation period begins to run when conviction and sentence are affirmed on direct review or at the expiration of seeking such review).

## III.     Factual Background

The following recitation of facts is taken from the Sixth Circuit's opinion from Edmonds direct appeal:

> At some point prior to July 2000, Detective Joseph Harper of the Chattanooga Police Department received information that the defendant was selling crack cocaine from a residence located at 1215 Poplar Street Court in Chattanooga. Consequently, Harper began observing the dwelling and, on August 14, 2000, he sent a confidential informant into the apartment to purchase some of the illegal drug. Based upon the results of the "controlled buy," and upon information provided by the confidential informant that "a large amount of crack cocaine" was present in the house at that time, Harper prepared an affidavit in support of an application for a warrant to search the premises.
>
> A state general sessions judge granted the request and, on August 16, 2000, Harper, together with fellow police officers, proceeded to 1215 Poplar Street Court to execute the warrant. Upon approaching the rear door of the residence, the police knocked and announced their presence. Hearing "what sounded like people running

around inside," Harper used a passkey to enter the dwelling. According to Sergeant David Roddy, another Chattanooga police officer who was then on the scene:

> I made my way into the back area of the residence, and upon arrival to the bathroom, which was about the first door on the left, I encountered Mr. Edmonds on his knees in front of the commode, with his hand on the handle, and I heard the commode start to flush. I looked into the commode, and there appeared to be one bag of crack cocaine and six bags of what appeared to be marijuana swirling in the water . . . At that time I pushed [Edmonds] to the floor, because he would not get out of my way. As I pushed him away, I felt Officer Noorbergen come back behind me at that time. I knew Officer Noorbergen would cover Mr. Edmonds, so I holstered my firearm and used my right hand to retrieve the one bag of crack and five of the six bags of marijuana from the commode. Another one managed to go down the drain before I could get to it. As I was retrieving them, I threw them into the sink which was located right next to the commode.

Edmonds was arrested and brought before a federal magistrate judge for a preliminary examination. Detective Harper was not present, but Detective Randy Dunn, another Chattanooga police officer familiar with the case, testified that Harper had been conducting surveillance on the home at 1215 Poplar Street Court "for approximately a month" and "had made an undercover buy" from the defendant. The case was then bound over to the grand jury, which returned a one-count indictment charging Edmonds with possession of crack cocaine with the intent to distribute.

Prior to trial, the defendant moved to suppress the evidence seized from the Poplar Street Court home on the ground that Harper had made material misstatements in his affidavit in support of his warrant application. The magistrate judge who conducted an evidentiary hearing on the matter concluded that there were no grounds presented to justify suppression of the challenged evidence. The district judge adopted that recommendation, denied the suppression motion, and conducted a bench trial on the charge of drug possession with the intent to distribute. At the conclusion of the trial, the district court issued a memorandum and order finding the defendant guilty as charged. Subsequent motions for a new trial were denied, and this appeal followed.

*United States v. Edmonds*, 106 Fed.Appx. 416-418 (6th Cir., 2004), 2004 WL 1791478, *1-2.

**IV.   Analysis**

5

The Court previously dismissed Edmonds due process claim involving the alleged knowing use of false testimony by the prosecution, as well as his claim based on the rulings in *United States v. Booker*, 543 U.S. 220 (2005), and *Blakely v. Washington*, 542 U.S. 296 (2004) (Court File No. 4). Thus, the only claims remaining for disposition are Edmond's ineffective assistance of counsel claims. The Court will analyze the applicable law before addressing each claim.

## A.    Applicable Law

In order to demonstrate ineffective assistance of counsel, Edmonds must show not only that his attorney's representation fell below the standard of competence demanded of attorneys in criminal cases but also that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

In *Strickland v. Washington*, the Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.*, below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, *i.e.*, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987). As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won."

There is a strong presumption counsel's conduct was within the wide range of reasonable

6

professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992). Thus, as the Court is required to do, it indulges in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984).

Edmonds has alleged several instances of deficient performance by his various attorneys. However, as explained below, the Court has determined Edmonds has failed to sustain his burden of proof and is not entitled to relief on any of his claims. Edmonds has failed to demonstrate performance by any of his attorneys was below professional standards. Moreover, since Edmonds has failed to show counsel's alleged deficient performance caused him to suffer any prejudice, his ineffective assistance of counsel claims will be **DISMISSED** as explained below.

### B.     Claims

Edmonds has raised claims against the four attorneys who represented him during different phases of his criminal proceedings. For the sake of clarity, the Court will summarize the history regarding the various attorneys who represented Edmonds. The Federal Defender Services was originally appointed to represent Edmonds in his criminal case on August 25, 2000 (Crim. Court File No. 4). Pursuant to that appointment, Attorney David F. Ness represented Edmonds during his initial appearance and Attorney Kim Tollison represented Edmonds during his suppression hearing. Subsequent to the suppression hearing Edmonds filed a motion to dismiss counsel on the grounds of ineffective assistance of counsel. The Court denied the motion after Attorney Tollison explained a difference of opinion arose between Edmonds and himself but the Federal Defender Services had no conflict with Edmonds (Crim. Court File No. 42). Thus, Attorney Anthony Martinez of the

Federal Defender Services continued to represent Edmonds.

Subsequent to his nonjury trial, Edmonds filed a motion to dismiss Attorney Martinez and a hearing was conducted. On the basis of the assertions made during the hearing, Federal Defender Services was relieved and Attorney John Brooks was appointed (Crim. Court File No. 63). Prior to his sentencing hearing, Edmonds filed a motion requesting the removal of Attorney Brooks due to a conflict of interest but Attorney Brooks informed the court Edmonds wanted to withdraw the motion, so the Court denied Edmonds motion (Crim. Court File No. 67). However, Edmonds filed a second motion requesting to dismiss Attorney Brooks and, after conducting a hearing, the motion was granted and Attorney Brooks was relieved of further representation of Edmonds as court appointed counsel but remained as standby counsel (Crim. Court File No. 83).

1.  *Attorney Kim A. Tollison*

Edmonds claims he was denied effective assistance of counsel when Mr. Tollison failed to properly demonstrate he had standing to contest the search of 1215 Poplar Street and there was no probable cause to issue the warrant. Edmonds has previously been denied relief on the underlying claims of standing and probable cause, thus, as explained below, counsel was not ineffective.

a.  *Standing*

The standing issue was raised and considered during Edmonds' motion for new trial (Crim. No. 1:00-cr-114, Court File No. 101). Therefore Edmonds cannot relitigate this issue absent exceptional circumstances or an intervening change in the law. *See Wright v. United States,* 182 F.3d 458, 467 (6th Cir. 1999) (holding, where petitioner litigated drug type before the district court and on direct appeal, he could not use his § 2255 petition to relitigate that issue). Edmonds has not alleged any exceptional factual circumstances or legal principles that alter the prior resolution of this

8

claim. Additionally, assuming for the sake of discussion that Edmonds could properly raise this claim in this § 2255 proceeding, his failure to raise it on direct appeal has rendered it procedurally defaulted. Consequently, absent a showing of cause and prejudice or actual innocence, this issue is barred from review. Nevertheless, assuming for the sake of argument that this claim is properly before the Court for adjudication in this proceeding, Edmonds is not entitled to relief for the same reasons expressed by the Court when it considered and denied the claim during the motion for new trial.

Edmonds was arrested at the apartment of Mr. William Hardin ("Mr. Hardin"). Edmonds contends he was a frequent guest at Mr. Hardin's residence, thus he had a legitimate expectation of privacy in the residence. During the hearing on Edmonds motion for new trial, Mr. Hardin testified he allowed Edmonds to stay at his apartment on occasion, including times when he was not present. However, Mr. Hardin had previously told Edmonds he did not have permission to be at the apartment on August 16, 2000, the day of the search. Further, Mr. Hardin testified Edmonds knew where he kept a spare key but stated he did not put a key out for his use on that date. Subsequent to the evidentiary hearing on the motion for new trial, this Court issued an Order denying the motion. Specifically, the Court concluded Edmonds did not have standing to challenge the legality of the search that yielded incriminating evidence against him because he did not demonstrate he had Mr. Hardin's consent to be present in the apartment on August 16, 2000, or was present at the apartment on that date for a legitimate personal occasion. Thus, Edmonds did not establish he had a right to be at the apartment or he had a legitimate expectation of privacy in Mr. Hardin's residence. Therefore, Edmonds lacked standing to challenge the search

Mr. Tollison, Edmonds original defense attorney, did not address the issue of standing during

the suppression hearing.  Nevertheless, since Edmonds lacked standing to challenge the search, it necessarily follows his attorney did not render ineffective assistance by failing to argue he had standing to challenge the search.  Accordingly, Edmonds has failed to demonstrate Mr. Tollison provided ineffective assistance of counsel by failing to argue he had standing to challenge the search, thus rendering this claim meritless.  Although Edmonds lacks standing to challenge the search, the Court, for the sake of discussion, will presume Edmonds has standing and explain why he is not entitled to relief on his probable cause challenge.

### b.    *Probable Cause*

Edmonds claims the search warrant was not supported with probable cause because Officer Harper's supporting affidavit was nothing more than a "'bare bones' composition of boilerplate language" consisting of nothing more than suspicions, personal uncorroborated beliefs, conclusion, and hearsay (Court File No. 3, p. 6).  Edmonds has failed to specify what portions of the affidavit he is attacking.  A review of the affidavit reveals it was not a boilerplate affidavit but rather included information about a tip from a reliable informant who, on August 2, 2000, advised of crack cocaine sales at 1215 Poplar Street Court, and on August 14, 2000, observed a large amount of crack cocaine at the address and subsequently made a purchase of crack cocaine from Edmonds at the residence (Crim. Court File No. 33).  Thus, the warrant was properly issued on the basis of probable cause.

Additionally, although Edmonds attacked the search warrant claiming it was based on false statements rather than boilerplate language on direct appeal,  the conclusion of the United States Court of Appeals for the Sixth Circuit—even if the alleged false statements were removed from the affiant's application "sufficient information would have remained in that affidavit to establish the probable cause necessary to obtain the requested search warrant,"—is binding in this proceeding.

10

*United States v. Edmonds*, 106 Fed.Appx.416, 420 (6thCir. 2004), *available in* 2004 WL 1791478.

Thus, in addition to lack of standing to attack the search warrant, it appears Edmonds is attempting to relitigate matters previously considered and rejected by the Court of Appeals. Edmonds' claim regarding probable cause is a transparent attempt to relitigate the claims which were argued and rejected on direct appeal, *i.e.,* the affidavit did not support a finding of probable cause. It is well-settled that a § 2255 motion may not be used to relitigate an issue that was raised and considered on appeal absent a showing of some exceptional circumstances for re-examining the issue. *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir.1996) (concluded movant could not re-litigate issue absent an intervening change in the law because issue was fully and fairly presented on direct appeal); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir.1996); *United States v. Jones*, 918 F.2d 9, 10 (2nd Cir.1990); *United States v. Grimes*, 573 F.Supp. 1202, 1206 (S.D.Ohio, 1983). Edmonds has not identified an exceptional circumstance or an intervening change in the law; thus, the Sixth Circuit's conclusion that probable cause was established is the law of the case and is binding on this Court. In addition, Edmonds lacks standing to attack the search warrant and the affidavit was sufficient to provide probable cause to issue the search warrant. Thus, Edmonds is not entitled to any relief on this claim.

2.    *Ineffective Assistance of Counsel and Due Process*

In his memorandum in support of his § 2255 motion, Edmonds includes approximately sixteen pages of a discussion of alleged errors by his various counsel which he entitled ineffective assistance of counsel and violation of due process. Although his discussion is difficult to decipher, the Court discerns Edmonds alleges his counsel made various errors at various stages of his criminal proceedings, particularly in connection with allegedly inconsistent and impeaching prior statements

11

by the law enforcement witnesses.

Edmonds previously made similar claims attacking the alleged inconsistent statements during his suppression hearing and arguing material misstatements had been made in the affidavit supporting the warrant application. Likewise, on direct appeal, Edmonds raised similar claims regarding the alleged discrepancies, in addition to claims regarding the government's failure to divulge the identity of the confidential informant, and the government's failure to provide certain alleged exculpatory documents to the defense. The Sixth Circuit concluded Edmonds failed to demonstrate the statements made in the affidavit in support of the search warrant application were either recklessly or deliberately false; nondisclosure of the confidential informant did not affect his ability to receive a fair trial; and the prosecution's alleged failure to turn over a copy of the police officer's report or the police logs of the drug-buy until after trial did not constitute a *Brady* violation.

The Court of Appeals' decision demonstrates, contrary to Edmonds' claim, counsel did, in fact, rely upon the inconsistencies in the prior statements and the inconsistencies in the police reports to attack and impeach the government's case. *See Edmonds,* 106 Fed.Appx. at 419, 421. Thus to the extent Edmonds is arguing the same or similar points already relied upon before this Court and on appeal, he has failed to demonstrate counsel's performance was deficient. It is well-settled Sixth Circuit law that a claim previously litigated before this Court and on direct appeal cannot be the basis for collateral relief absent exceptional circumstances or a change in the law, neither of which is present in this case. *See Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999), *DuPont v. United States*, 76 F.3d 108, 111 (6th Cir. 1996).

Because counsel did, in fact, rely upon these same facts and used them to attack the

government's case, any difference between counsel's theory and Edmonds' theory of how these facts should have been argued, is simply a difference of opinion in trial strategy and not ineffective assistance of counsel. Edmonds has not demonstrated counsel's strategy was unreasonable or outside the wide range of competency, thus, no relief is warranted under § 2255.

In addition, although the challenges to counsel's performance go to matters that could have arguably impeached some of the government's witnesses, none of these matters go to Edmonds guilt. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. "Virtually every act or omission of counsel would meet this test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (citation omitted). Thus, to the extent counsel failed to impeach a witness, Edmonds has not demonstrated such omission undermines the reliability of the proceeding. Edmonds has failed to demonstrate but for counsel's omissions there is a reasonable probability the Court would have acquitted him. Contrary to Edmonds' claims, there was more than sufficient credible testimony and evidence for the Court to find, beyond a reasonable doubt, he possessed crack cocaine with the intent to distribute it. Moreover, the possible impeachment matters raised by Edmonds are matters that are not material to his conviction and sentence. Having made these conclusions regarding Edmonds' general claims of ineffective assistance of counsel, out of an abundance of caution, the Court will analyze the claims against each attorney.

Edmonds had three different attorneys during these proceedings, and although he apparently had conflicts with these attorneys, as explained below, he has failed to demonstrate any of his attorneys were constitutionally deficient. The Court now turns to Edmonds' specific claims.

13

a.      *Attorney David F. Ness*

Attorney David F. Ness ("Attorney Ness") represented Edmonds during his suppression motion hearing. Edmonds claims Investigator Dunn's testimony relative to threats allegedly made by Edmonds was obtained  from two different reports made by Officer Harper, and counsel, Attorney Ness, failed to use those reports to attack the flawed police investigation.  Contrary to Edmonds allegations, as explained below, the record indicates these threats were made at two different times during Edmonds apprehension, and thus, there was no flawed investigation for counsel to attack.   During the initial appearance, it appears Investigator Dunn referred to Officer Harper's investigative report and investigative notes, but not to the incident report.   Nevertheless, even assuming Edmonds was correct in his contention that the incident report and the investigative report contained inconsistencies, this claim attacking counsel's performance at the initial hearing warrants no § 2255 relief as it is irrelevant to the constitutionality of Edmonds conviction and sentence.   In addition, defense counsel was aware of the two reports during the trial and even assuming there were inconsistencies, Edmonds has not demonstrated he was prejudiced by the alleged inconsistencies.

It appears an incident report was completed by Investigator James Hixson and Officer Harper typed up an investigation report (Court File No. 3, Exhibits 3 & 4).  The incident report reflects Investigator Hixson located a bag of shotgun shells in a closet next to the bathroom, Edmonds "became extremely irate and began making threats on the officers lives.  Mr. Edmonds stated, 'Once I get out I'll take care of yall' and 'yall have already killed my Brother at Choo Customs I'm going to get you.'" (Court File No. 3, Exhibit 3).  In the investigation report, Officer Harper wrote "Mr. Edmonds was taken into custody and read his rights by issuing agent, Investigator Harper, which

14

seemed to prompt Mr. Edmonds to shout that police killed his brother Kevin McCullough and that one of us would pay when got it [sic]. He specifically stated, 'I swear on my mama's grave that I will get one of you mother f_ _ _ _ _ _ when I get out, you mother f_ _ _ _ _ _ killed my brother Kevin up there at Choo Choo Customs, but I ain't going out like that!'" (Court File No. 3, Exhibit 4).

Although Edmonds contends there are inconsistencies and lies in the reports, he fails to support his conclusion with any facts. The information referred to above indicates Edmonds threatened the officers on two different occasions during the search of the residence. However, even assuming these threats were only made on one occasion and the reports are referring to the same incidence, any inconsistencies are inconsequential to Edmonds conviction and sentence, and there is no evidence the challenged statements were either reckless or deliberately false. Edmonds does not deny making those statements, nor does he provide any details of his version of what transpired during his arrest. Rather, presumably, he is arguing that since the statements in the two reports are not the same, they are inconsistent and therefore, are false. This premise is incorrect, however, because the two reports appear to be identifying two separate occasions when Edmonds made threats. In addition, even assuming the reports are referring to one incident, there is no evidence the statements are deliberately false or reckless or that they have any relevance to Edmonds conviction and sentence. Even assuming counsel was deficient for failing to try to impeach Investigator Dunn, Edmonds has not demonstrated he was prejudiced by this alleged deficiency. Thus, absent any relevance to Edmonds' conviction and sentence, these alleged discrepancies regarding Edmonds threats to law enforcement are of no consequence in this § 2255 proceeding. Consequently, Edmonds has failed to demonstrate counsel was deficient for failing to try to impeach

Investigator Dunn during his initial appearance with the alleged inconsistent statements in the reports regarding Edmonds threats to law enforcement.

> b. *Attorney Anthony Martinez*

Next, Edmonds claims the prosecution's failure to inform the defense of the two reports—the incident report and the investigation report—violated his due process rights and rendered trial counsel, Mr. Anthony Martinez, ineffective during his nonjury trial. Initially, the Court observes, just as Officer Harper testified, the incident report is shorter and less detailed than the report of investigation (Court File No. 3, Exhibit 3 and 4 respectively). The incident report was a form report with a short, approximately one-half page summary, and the report of investigation was a page and a half narrative report.

The transcripts reflect defense counsel was well aware of two reports. While cross-examining Officer Harper, defense counsel referred to the fact that Officer Harper had "drafted another report or typed another report on August 16th[.]" (Crim. Court File No. 51, p. 46). Counsel's questioning revealed Investigator James Hixson actually drafted the incident report and Officer Harper approved the report (Crim. Court File No. 51, p. 48). Officer Harper explained the two reports in response to defense counsel questions as follows:

> This is an incident report, just located into our CAD. What we have for our accuracy, we have the investigative reports that I have written on the case. This is merely something for our CAD, or for our records; just gives a summation of the incident. I gave the particulars in detail in my investigative reports.

Thus, the defense knew there was more than one report regarding the investigation of this matter (Crim. Court File No. 51, pp. 48-49; 73-77). Nevertheless, even if the defense did not know of the two reports, Edmonds has failed to demonstrate how any discrepancies in the reports harmed him

16

or resulted in a constitutional violation. Edmonds claims the reports contained different summations regarding the $419 in U.S. currency that was recovered; failed to mention the other two people who were present in the apartment; contained different facts regarding his handcuffing; and lacked any mention of advising him of his *Miranda* rights. Edmonds does not raise a constitutional claim; rather, he contends the discrepancies "raised the opportunity to attack the thoroughness, and even good faith of the investigation." (Court File No. 3, p. 15-16). As explained below, the alleged discrepancies in the reports do not rise to a constitutional violation as they had no material relevance to Edmonds' conviction and sentence. Moreover, counsel was well aware of the two reports, thus, § 2255 provides no remedy for this claim.

### i.    Number of Occupants

The presence of the other two parties at the residence at the time of the search was covered at trial. During trial, Officer Roddy testified, as he entered the residence, he encountered a female seated on the couch and there was another gentleman found in a rear bedroom (Crim. Court File No. 51, pp. 10-16). Thus, although counsel chose not to cross-examine Officer Roddy about the others who were present at the time of Edmonds arrest, he had the necessary information to do so. In addition, the subject of the presence of the other two parties during the search was raised again during trial by Officer Harper, who testified that when he entered the residence, he located another party in the bedroom and observed a party sitting in the living room (Court File No. 50, pp. 19-20). Defense counsel cross-examined Officer Harper about the other parties he observed at the time they executed the search warrant (Court File No. 50, pp. 34-35).

The prosecution's alleged failure to notify Edmonds and counsel of these two people, people who Edmonds obviously knew were present at the time of his arrest, did not violated Edmonds due

process rights or render defense counsel ineffective. The fact two other parties were present in the residence at the time of the search is of no consequence to Edmonds' conviction and sentence. Thus, any failure on the part of the prosecution to notify defense counsel of these parties did not amount to a constitutional violation.

In addition, Edmonds challenges Investigator Dunn's detention hearing testimony that Edmonds was the only one in the house. Investigator Dunn testified he was not at the residence during the search and he was testifying based on reports he was given and his own knowledge, neither of which provided him with the information regarding the other two occupants of the residence. Nevertheless, Investigator's Dunn lack of knowledge of the other two occupants and any discrepancy in the reports regarding these other two occupants is of no consequence to Edmonds conviction and sentence. Accordingly, Edmonds is not entitled to any § 2255 relief on this claim.

### ii. *Recovered Money*

Edmonds contends counsel was ineffective for failing to explore the discrepancies about the location of the money. The Court observes there was a slight discrepancy between the reports and Officer Harper's testimony about the location of the money that was recovered during the search. However, this discrepancy is inconsequential. Officer Harper testified $380.00 was on Edmonds wallet and $39.00 was in Edmonds right pocket, which he seized as illegal drug proceeds. The incident report stated the $419.00 was located on Edmonds person and the investigative report stated $39.00 was in Edmonds front right pocket and $380.00 was found near his wallet. Edmonds has not explained how this discrepancy violated his due process rights or rendered counsel ineffective. Additionally, Edmonds neither denies the amount of the money nor the source of the money. Nevertheless, the discrepancy of the location of the currency does not raise a constitutional issue but

18

rather, is irrelevant in this § 2255 proceeding.

*iii.    Miranda Warnings*

Edmonds contends counsel was ineffective for failing to challenge the discrepancy regrading when he was advised of his *Miranda* rights. The incident report does not address the *Miranda* warnings and the investigative report reflects that once Edmonds was taken into custody and handcuffed, Officer Harper advised him of his *Miranda* rights. Likewise, on direct examination, Officer Harper testified he read Edmonds his *Miranda* rights after Edmonds was arrested (Crim. Court File No. 51, pp. 26-27). Edmonds does not claim he was not advised of his *Miranda* rights nor does it appear he was questioned by officers. Therefore, regardless of any alleged discrepancy, the record reflects Edmonds was advised of his *Miranda* rights and is not entitled to § 2255 relief on this claim.

*iv.    Handcuffing*

Edmonds contends there are discrepancies in the reports about him being handcuffed. Edmonds does not identify the alleged discrepancies. The incident report states "Mr. Edmonds was handcuffed and brought into the den of the residence." (Court File No. 3, Exhibit 3). The investigative report describes the handcuffing incident as follows:

> Once moved from the bathroom to the den/living room area, police were attempting to handcuff Mr. Edmonds who tightened his forearms and pulled his arms away from officers executing the handcuffing. Officers were forced to employ a training technique, arm bar, and take Mr. Edmonds to the ground where he surrendered his arms after flailing and kicking about for a brief period of time. Mr. Edmonds was taken into custody and read his rights by issuing agent.

(Court File No. 3, Exhibit 4). There are no discrepancies in the two reports. As noted above, the incident report is a brief synopsis of the search and arrest and the investigative report is a more detailed description of the search and arrest.

19

During his nonjury trial, Officer Harper testified he placed Edmonds under arrest in the den

after other officers had cuffed him in the bathroom (Crim. Court File No. 51, pp. 49-50). On cross-

examination, however, Officer Harper testified he did not handcuff Edmonds and he thought he was

handcuffed in the bathroom but he possibly could have been cuffed in the den (Court File No. 51,

pp. 77-78). The location of Edmonds at the time he was cuffed is neither important nor relevant to

the constitutionality of his conviction or sentence. Consequently, Edmonds' claim regarding the

location of his handcuffing does not entitled him to any § 2255 relief.

> v. *Closing Argument*

Edmonds' final claim against Attorney Martinez is that counsel was ineffective during

closing argument because, rather than argue the pawn receipt demonstrated why he was in

possession of the $419.00, counsel argued the $380.00 found on the porch near Edmonds' wallet did

not belong to Edmonds (Crim. Court File No. 51).[1] Edmonds contends that because he never denied

ownership of the money and because the pawn receipt demonstrated the money was Edmonds and

came from another source rather than from drug sales, counsel was ineffective when he submitted

his written closing argument claiming the $380.00 did not belong to Edmonds (Crim. Court File No.

52). Contrary to Edmonds claim, the testimony about the pawn receipts does not demonstrate the

---

[1]        The only testimony regarding a pawn receipt was when defense counsel asked Officer
Harper if the receipt he referred to when he testified "there was like, a receipt with a 34-dollar
balance" could have been a pawn receipt. Officer Harper responded it was possible that the receipt
was the pawn receipt. Defense counsel subsequently showed Officer Harper two documents
identified as Household Pawn of Chattanooga which Officer Harper described as receipts which he
could not confirm were receipts found with Edmonds wallet but he did state "I can testify there's
a 34-dollar balance. 128.50. 132." (Crim. Court File No. 51, p. 82; 88-89).

money was Edmonds' or that it was from another source.[2] There is no testimony regarding the dates of the pawn receipts and no evidence the money came from the pawn shop or any other legitimate source. Thus, the Court disagrees with Edmonds argument the Court's conclusion he possessed cocaine with the intent to distribute "creates a reasonable probability that without counsel's critical error concerning the $ 419.00, the outcome would have been different." (Court File No. 3, p. 19).

As explained below, after trial and submission of briefs by counsel, the Court concluded:

> In this case, the quantity of drugs involved, fifteen to twenty-five rocks of cocaine weighing approximately six grams, indicates the drugs were for distribution rather than personal use. Along with the crack, police also seized five individual baggies of marijuana. The fact the marijuana had been separated into individually packaged smaller amounts indicates it was intended for resale. Edmonds was apprehended during a police raid of a residence known for drug activity. During the raid, police found two other people in the residence, one of whom was a known crack addict who spent every cent he could get his hands on acquiring crack cocaine. At the time of his arrest, Defendant was in possession of over $400.00 in cash, and he threatened to kill the arresting officers. All of this evidence, when taken together, is sufficient to establish, beyond a reasonable doubt, that Edmonds possessed the cocaine base with the specific intent to distribute it.

(Crim. Court File No. 54, p. 5). Nevertheless, even if the money came from the pawn shop or a legitimate source thus removing it from the Court's consideration when reaching its conclusions of law, based on the other facts identified in its conclusion above, the Court would have, likewise, concluded Edmonds possessed the cocaine base with the specific intent to distribute it.

Edmonds is not entitled to any § 2255 relief on this claim because the proof before the Court demonstrated, beyond a reasonable doubt, that Edmonds possessed the cocaine with the intent to distribute. Thus, even if counsel was deficient for failing to argue the money came from the pawn shop, Edmonds cannot demonstrate he was prejudiced because the other proof demonstrates he was

---

[2] Edmonds did not testify. Thus, he never denied or admitted the money belonged to him.

selling crack cocaine.

     *c.      Attorney John Brooks*

Finally, Edmonds claims appointed counsel, John Allen Brooks ("Attorney Brooks"), was ineffective during his motion for new trial hearing because counsel failed to investigate the authenticity of two reports reflecting an undercover buy was actually made from Edmonds and he failed to object to the reports being entered as evidence because they were not certified copies.[3]

This claim offers Edmonds no relief as the Court has previously concluded Edmonds "lacks standing to claim the Fourth Amendment protects him from the allegedly illegal search leading to his arrest." (Crim. Court File No. 70). Thus, since the Court concluded Edmonds had no standing to attack the search, Edmonds, likewise has no standing to attack the evidence supporting the search, *i.e.* the law enforcement reports evidencing the drugs purchase by the confidential informant. Thus, even if the reports were not authentic, Edmonds lacks standing to challenge them.

Additionally, even if counsel was deficient for failing to investigate the authenticity of the documents and object to allegedly uncertified copies, it appears Edmonds has failed to demonstrate Attorney Brooks was deficient pursuant to the *Strickland* test as there is no evidence the documents

---

[3] During trial, defense counsel questioned Officer Harper about documentation of the buy by the confidential informant and Officer Harper explained he did not have a copy of the documents with him but complaint No. 2000-115984 would provide evidence of the controlled buy (Crim. Court File No. 51, pp. 79-80; 86). In his closing argument, defense counsel strenuously argued the Court should not consider any testimony regarding a controlled buy from Edmonds because the government failed to produce any evidence *i.e.,* the date the controlled buy occurred; the amount of money given to make the controlled buy, or any reports concerning the controlled buy (Crim. Court File No. 52, p. 3). When new counsel was appointed, a motion for new trial was filed challenging the search warrant, based in part, on the lack of proof of the alleged controlled buy of crack cocaine from Edmonds.

are not authentic or accurate copies,[4] thus, Edmonds suffered no prejudice.

Accordingly, since Edmonds lacks standing to challenge the search, he necessarily lacks standing to challenge the documents which support the affidavit to obtain the search warrant. Consequently, Edmonds has not demonstrated counsel was ineffective for failing to challenge the authenticity of the reports or object to uncertified copies being introduced during his motion for new trial hearing. Thus, Edmonds is not entitled to relief on this claim.

In summary, Edmonds has not demonstrated any exculpatory evidence was suppressed by the prosecution, the police investigation or his trial was flawed in any way, any statements in the police records were recklessly or deliberately false, any testimony amounted to perjury, or any reports were unauthentic or inaccurate. Thus, he has not demonstrated his various attorneys were ineffective for failing to pursue these avenues of defense. Accordingly, Edmonds is not entitled to relief on any of his various claims of alleged ineffective assistance of counsel.

## IV.    Conclusion

In sum, Edmonds has failed to present any facts which establish his conviction or sentence is subject to collateral attack under 28 U.S.C. § 2255.  Edmonds is not entitled to any relief under § 2255.

A judgment will enter **DENYING** Edmonds's motion.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

_____

[4]        Certification establishes only that the document is an accurate copy.